FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 07, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STERLING AND WILSON SOLAR SOLUTIONS, INC., a Delaware Corporation,<br><br>          Plaintiff,<br><br>          v.<br><br>FIDELITY AND DEPOSIT COMPANY OF MARYLAND, an Illinois insurance company, and ZURICH AMERICAN INSURANCE COMPANY, an Illinois insurance company,<br><br>          Defendants. | No. 1:22-CV-03076-SAB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL; DENYING DEFENDANTS' MOTION TO BIFURCATE AND STAY DISCOVERY** |

Before the Court are Plaintiff's Motion to Compel, ECF No. 164, and [Amended] Motion to Compel, ECF No. 166, as well as Defendants' Motion for a Protective Order, ECF No. 167, and Motion to Bifurcate and Stay Discovery, ECF No. 169. Plaintiff is represented by Ana-Maria Popp, Justin T. Scott, and Rochelle Y. Doyea. Defendants are represented by Allen W. Estes, III, Melissa Lee, and Paul Friedrich. The Motions were considered without oral argument.

//

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL; DENYING DEFENDANTS' MOTION TO BIFURCATE AND STAY . . . # 1**

## FACTUAL BACKGROUND

Plaintiff is constructing a solar power plant in Klickitat County. Plaintiff entered into a subcontract with Conti, LLC ("Conti") for Conti to perform work on the power plant. Defendants[1] issued a performance bond that guaranteed Conti's performance under the subcontract for just under $31 million ("the Bond").

Sometime in November 2021, Conti began to falter in its performance under the subcontract, and on February 18, 2022, Plaintiff terminated Conti's subcontract for default. On February 21, 2022, Plaintiff sent written notice ("the Notice") to Defendants, advising that Conti defaulted on the subcontract and specifically stating that the Notice was being provided pursuant to Section 3 of the Bond. Plaintiff has conceded that it did not comply exactly with the provisions of 3.1, 3.2, and 3.3 of the Bond; however, Section 4 of the Bond states that "Failure on the part of [Plaintiff] to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition precedent to [Defendants'] obligations, or release [Defendants] from [their] obligations."

Under Section 5 of the Contract, Defendants had ten (10) days to respond to the Notice and indicate whether it would (1) arrange for Conti to complete the work, (2) undertake to perform and complete the subcontract itself, or (3) obtain a bid from another contractor to complete the work. However, after losing the Notice, Defendants never provided a response. On March 11, 2022, more than ten (10) business days after Defendants' receipt of the Notice, Plaintiff signed a subcontract with OLG, Inc. to complete Conti's work.

## RELEVANT PROCEDURAL HISTORY

Plaintiff filed its Amended Complaint on June 8, 2023, claiming (1) breach

---

[1] While the Bond was issued by Defendant Zurich, "Defendants" is used for the sake of simplicity and avoiding confusion. *See* ECF 167 at 1 (referring to both Defendants collectively as "Zurich").

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL; DENYING DEFENDANTS' MOTION TO BIFURCATE AND STAY . . . # 2**

of contract and (2) breach of implied covenants of faith and good dealing (collectively "the Bond Claims"). Plaintiff also claims (3) violation of the Unfair Business Practices Act (RCW 19.86.020), (4) tortious insurance bad faith, and (5) statutory insurance bad faith under RCW 48.30.010 (collectively "the Bad Faith Claims"). Plaintiffs finally allege (6) *Olympic Steamship* damages for attorney's fees under Washington state law. Defendants counterclaim for breach of contract and are seeking declaratory judgment.

On August 25, 2023, Defendants filed their Second Motion for Summary Judgment. On April 4, 2024, the Court denied the Second Motion for Summary Judgment, finding that Defendants' principal argument—that they had no legal obligation to respond to the lost notice because Plaintiff did not comply with the provisions of Section 3—directly contradicted the terms of Section 4. The Court found that "[c]onstruing the facts in the light most favorable to [Plaintiff], [Plaintiff] created disputes of material fact regarding Defendants' motion and genuine factual issues concerning the [Bad Faith] Claims exist."

On March 29, 2024, Defendants filed their Third Motion for Summary Judgment. On May 21, 2024, the Court denied the Third Motion for Summary Judgment, noting

> This is the third motion for summary judgment filed by defendants. The previous two motions were denied because (1) Defendants misconstrue the requirements of the contract with Plaintiff and (2) issues of material fact exist rendering dispositive motions inappropriate. Upon review, this third motion is denied for the same reasons outlined in ECF Nos. 34 and 139.
>
> Additionally, Defendants are prevented from filing any additional dispositive motions unless first requesting and obtaining permission from the Court. Any motion requesting permission should not exceed 5 pages and should outline the reasons why the factual record materially changed in such a way that summary judgment is now warranted.

ECF No. 152.

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL; DENYING DEFENDANTS' MOTION TO BIFURCATE AND STAY . . . # 3**

On December 26, 2024, Plaintiff filed a Motion to Compel, ECF No. 164,[2] requesting "the production of Defendants' surety file and non-privileged claim documents." In that Motion, Plaintiff noted that Defendants had provided a privilege log that identified 104 documents as protected under the attorney-client or work-product doctrines.[3] These included communications between in-house adjusters—including David Bresel and Darrell Leonard, who are licensed attorneys—and other employees of Defendants. Defendants do not dispute Plaintiff's allegations that while Defendants identified both Mr. Bresel and Mr. Leonard as attorneys, Defendants

> refused to confirm whether either individual was acting in their capacity as legal counsel or as in-house adjuster. Yet [Defendants'] Initial Disclosures identifies David Bresel as the only witness from Zurich as having relevant knowledge of [Plaintiff's] Bond claim, and in fact, Mr. Bresel and Mr. Leonard appear to have been acting in a dual capacity, both in assisting with Zurich's defense and in investigating and adjusting [Plaintiff's] Bond claim. However, the Privilege Log's entries contain insufficient information for [Plaintiff] to determine the nature or purpose of these withheld documents.

ECF No. 166 at 5–6.

On January 3, 2025, before responding to the Motion to Compel, Defendants filed a Motion for Protective Order, ECF No. 167, seeking "a protective order forbidding discovery of their post-litigation files created after May 31, 2022, the date [Defendants were] first notified of this lawsuit." The same day, Defendants

---

[2] Amended at ECF No. 166 to reflect correct date of argument.

[3] In their response at ECF No. 171, Defendants stated that Plaintiff is only seeking to compel discovery the 87 documents that they identified as work product; however, Plaintiff's reply at ECF No. 173 makes it clear it is also seeking documents that Defendants have identified as protected under attorney-client privilege.

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL; DENYING DEFENDANTS' MOTION TO BIFURCATE AND STAY . . . # 4**

filed a Motion to Bifurcate and Stay Discovery, ECF No. 169, asking the Court to bifurcate the Bond Claims from the Bad Faith Claims and to stay discovery of the Bad Faith Claims until the Bond Claims are resolved.

## PLAINTIFF'S MOTION TO COMPEL AND DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Because the Court has diversity jurisdiction in this case, federal law governs assertions of work-product protection, while Washington state law governs assertions of attorney-client privilege. *See* Fed. R. Civ. P. 501; Fed. R. Civ. P. 26(b)(3).

### A. **Work-Product Doctrine**

#### i.   *Legal Framework*

The work-product doctrine prevents discovery of documents prepared in anticipation of litigation. Fed. R. Civ. P. 26(b)(3). To qualify as work product, documents must meet two prongs: (1) they "must be prepared in anticipation of litigation or trial" and (2) they must be prepared "by or for another party or by or for that other party's representative." *Id*.; *see e.g.*, *In re California Pub. Utils. Comm'n*, 892 F.2d 778, 780–81 (9th Cir.1989).

When documents are not prepared exclusively for litigation, they are referred to as dual-purpose documents and courts apply the "because of" test. *United States v. Richey*, 632 F.3d 559, 67–68 (9th Cir. 2011). The "because of" test does not consider whether litigation was the primary or secondary motivation for preparing a dual-purpose document. *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2004). Instead, under the "because of" test, a dual-purpose document is treated as work product if, given the nature of the document and the totality of the circumstances, the court determines the dual-purpose document "was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL; DENYING DEFENDANTS' MOTION TO BIFURCATE AND STAY . . . # 5**

litigation." *Id*. Said another way, a dual-purpose document that would have been prepared absent the prospect of litigation is not protected under the work-product doctrine.

### ii.    *Analysis*

Defendants argue that the documents Plaintiff seeks were all created after this litigation commenced and are thus work product. Specifically, Defendants contend that the investigation "and all related documents" are "inextricably tied to this lawsuit," satisfying the "because of" test. ECF No. 180 at 6. Defendants further place the blame on Plaintiff, stating that Plaintiff's decision to file this lawsuit deprived them of the opportunity to conduct a pre-litigation investigation because they were "thrust[] . . . "into defending and investigating [Plaintiff's] claims *in* litigation." *Id*. (emphasis in original).

Plaintiff argues that Defendants' investigation into the handling of the Bond Claims are central to Plaintiff's Bad Faith Claims and that Defendants should not be able to assert blanket privilege as a result of their decision to combine the litigation and investigation files.

Defendants' arguments are unpersuasive. Whether the documents are "inextricably intertwined" between the investigation and the litigation is not the relevant inquiry under the "because of" test. Rather, the Court's analysis here turns on whether the documents would have been prepared absent the prospect of litigation, and absent this lawsuit, Defendants still would have investigated the handling of the Bond Claims—specifically the undisputed fact that Defendants lost the Notice. The timing of Plaintiff's lawsuit is a fact to consider; however, when weighing the totality of the circumstances, the "because of" test weighs in favor of discovery because it appears Defendant failed to make a good faith effort to maintain a privilege log separate from the investigation file.

//

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL; DENYING DEFENDANTS' MOTION TO BIFURCATE AND STAY . . . # 6**

## B. <u>Attorney-Client Privilege Doctrine</u>

### i. *Legal Framework*

The attorney-client privilege doctrine shields confidential communications regarding legal device and strategy between a client and an attorney. *See Pappas v. Holloway*, 114 Wash. 2d 198, 203 (1990). The purpose of attorney-client privilege is to encourage free and open communication between the client and attorney. *Id*. Because the attorney-client privilege may "result[] in the exclusion of evidence which is otherwise relevant and material," the privilege "must be strictly limited to the purpose for which it exists." *Id*. at 203–04.

In *Cedell v. Farmers Insurance Company of Washington*, the court held that an insurer may not invoke the attorney-client or work-product doctrines in first party insurance bad faith claims (i.e., when the insured is alleging bad faith against the insurer). 176 Wash. 2d 686, 697 (2013). However, the court further noted that there is a difference between first party insurance suits and underinsured motorist ("UIM") claims, and that insurers in UIM cases could assert attorney-client and work-product privilege. *Id*. Ultimately, the court in *Cedell* cautioned that even in UIM cases, there are limits to an insurer's attorney-client privilege. *Id*.

### ii. *Analysis*

Defendants argue, without citing any supporting authority, that the Bond "occupies a similar position to a UIM claim." ECF No. 167 at 7. Based on this assumption, they contend that Washington Supreme Court's decision in *Cedell* is instructive here.

As a preliminary matter, Defendant has shown no case law demonstrating that the present matter is sufficiently analogous to a UIM case, and the *Cedell* court specifically cautioned that blanket attorney-client privilege protections may not apply even within a UIM context. Moreover, as noted above, Defendants do not dispute Plaintiff's allegations that Defendants identified both Mr. Bresel and

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL; DENYING DEFENDANTS' MOTION TO BIFURCATE AND STAY . . . # 7**

Mr. Leonard as attorneys but failed to provide sufficient information to determine whether their communications were protected under attorney-client doctrine. This further demonstrates Defendants' failure to create a privilege log in good faith, and the Court finds that excluding the requested communications would go beyond the purpose for which the attorney-client privilege exists.

## DEFENDANTS' MOTION TO BIFURCATE AND STAY DISCOVERY

### A. Legal Framework

In a civil case, a court may, at its discretion, bifurcate issues; claims; or counterclaims in order to (1) further convenience; (2) avoid prejudice; or (3) further judicial economy. Fed. R. Civ. P. 42(b); *see also Hangarter v. Provident Life & Acc. Ins. Co*., 373 F.3d 998, 1021 (9th Cir. 2004) (noting that "Rule 42(b) merely *allows*, but does not require, a trial court to bifurcate cases") (emphasis in original). A court may also stay discovery in civil cases if "it is convinced that the plaintiff will be unable to state a claim for relief." *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981).

### B. Analysis

Defendants argue that the Bond Claims should be bifurcated from the Bad Faith Claims. First, Defendants argue bifurcation will provide convenience by allowing the parties and the Court to focus on the merits of the Bond Claims before addressing the Bad Faith Claims because the Bond Claims are dispositive as to the Bad Faith Claims. Second, Defendants argue they will be prejudiced if the claims are litigated simultaneously because the "jury will be tainted through the introduction of prejudicial, potentially inadmissible evidence." ECF No. 169 at 6. Defendants also argue they will be subject to additional prejudice because litigating all of the claims simultaneously will force them to choose between (1) waiving protection under the work-product and attorney-client privilege doctrines or (2) maintaining protection under those doctrines but forgoing their ability to

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL; DENYING DEFENDANTS' MOTION TO BIFURCATE AND STAY . . . # 8**

demonstrate that they investigated Plaintiff's claim in good faith. Finally, Defendants argue bifurcation will further judicial economy because whether Plaintiff "failed to comply with Section 3 of the Bond, an absolute condition precedent, is a straightforward legal question." *Id*. at 8.

Plaintiff notes that Defendant has already filed three separate motions for summary judgment, each contending that Plaintiff's noncompliance with Section 3 of the Bond is dispositive, and each have been denied. Plaintiff further argues that since the trial has already been moved to March 2026, further delay will in fact hinder judicial economy and inconvenience the parties and the Court by causing them to expend more time and resources.

With regard to convenience and judicial economy, Defendants rely heavily on the assumption that Plaintiff's noncompliance with Section 3 completely eliminates their liability. They are mistaken, however: this Court has continuously held that the plain language of Section 4 makes it clear that Plaintiff's failure to comply with Section 3 does not release Defendants from their obligations under the Bond. The issue of prejudicial or inadmissible evidence tainting the jury is better addressed through motions in limine and jury instructions, not bifurcation. The issue of Defendants having to choose between waiving or maintaining privileges is moot: Defendants already made a choice by failing to create a privilege log in good faith. Because they chose to intermingle the investigation and litigation files, they cannot now claim that this decision warrants bifurcation.

Bifurcation of this matter is inappropriate and would result in wasted time and resources. Based on this determination, the Court also declines to stay discovery.

Accordingly, **IT IS HEREBY ORDERED:**

1.    Plaintiff's Motion to Compel, ECF No. 164, and [Amended] Motion to Compel, ECF No. 166 are **GRANTED**.

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL; DENYING DEFENDANTS' MOTION TO BIFURCATE AND STAY . . . # 9**

2.      Within **fifteen (15)** days of this Order, Defendants shall produce to Plaintiff any and all documents related to Defendants' investigation and handling of Plaintiff's Bond Claim, as sought by Plaintiff's Request for Production Nos. 7–13, and 29, including but not limited to those documents listed on Defendants' Privilege Log, ECF No. 165 at 19–22. This Order does not include attorney-client communications with, or work-product material created by, Defendants' outside counsel.

3.      Defendants' Motion for a Protective Order, ECF No. 167, and Motion to Bifurcate and Stay Discovery, ECF No. 169, are **DENIED**.

4.      The Court's prior orders regarding motions for summary judgment remain in effect. *See* ECF No. 152.

**IT IS SO ORDERED.** The District Court Clerk is hereby directed to file this Order and provide copies to counsel.

**DATED** this 7th day of March 2025.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL; DENYING DEFENDANTS' MOTION TO BIFURCATE AND STAY . . .** # 10